# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4030-01-CR-C-SOW |
| | ) | |
| ERIC CHRISTOPHER OPIE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Eric Opie filed a motion to suppress evidence and statements obtained on or about April 10, 2006. He asserts his Fourth Amendment rights were violated when he was arrested without probable cause and when officers conducted a warrantless search of his vehicle and the house where he was staying. The case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1, and on February 7, 2007, a suppression hearing was held.

### Testimony

The Government called Brian Kidwell, a detective with the Miller County Sheriff's Department, to testify. Kidwell stated he received a telephone call on April 9, 2006, from Gary Parsons who told him defendant Eric Opie was visiting Brian Beard, who lived at Parsons' residence. Parsons said Opie had a fully-loaded automatic weapon, identified as a "greaser." Kidwell called his partner, detective John Loveless, and they decided not to further investigate that evening because they weren't sure where Opie was.

The following morning, Kidwell received another telephone call from Parsons and was told Opie had the weapon and was working on his Chevrolet S10 Blazer at Parsons' residence at 102 Smiley Lane. Parsons described the weapon and asked that his identity remain confidential. Kidwell then called Loveless and Sgt. Don Isaac and arranged to meet them at Pecker's bar in Lake Ozark, Missouri. On his way to Pecker's, Kidwell drove by the residence on Smiley Lane and confirmed Opie's vehicle was there. The officers met at Pecker's and proceeded to Smiley

Lane in Isaac's vehicle. Loveless was dropped off to go to the back of the residence and Isaac drove to the front of the residence and pulled into the driveway. They saw Opie working at or near his vehicle. The officers got out and approached Opie from opposite sides of Opie's Blazer. The doors on the Blazer were open and as Kidwell passed it, he could see a black ammunition magazine partially covered by a towel.

Kidwell stated they approached Opie with their guns holstered and Kidwell told him why they were there. He asked for consent to search the vehicle, and Kidwell stated Opie gave consent. Kidwell then went back to the Blazer and removed the magazine and a 45 caliber grease gun from the floorboard area. During the search, Isaac found a spoon with visible white residue.

About that time, Loveless came around from the rear of the mobile home and told the officers he had heard a noise inside it. Loveless and Kidwell then did a sweep of the residence by checking each room, under the beds and in the closets, to make sure no one else was there. They did not seize any items, although drug items were in plain view. Officers left the residence and contacted the Miller County Prosecutor's Office. They also used Opie's telephone and called Parsons, who came to the residence and gave consent for a search of the residence. Kidwell testified Parsons signed a consent-to-search form, but the form has been misplaced. Parsons had ownership of the residence and lived there. Beard also lived at the residence and Opie had spent the previous night there.

During the search following Parsons' consent, officers found a credit card in Opie's name, loose powder on a tabletop, pills, marijuana, a wallet and money. Isaac and Opie stayed outside the residence during the search, and when Kidwell returned outside, Opie was handcuffed and upset.

Kidwell testified that his narrative in the incident report contained several inaccuracies and did not contain all of the facts. He stated his testimony during the hearing was accurate.

The Government also called Sgt. Donald Isaac, an investigator with the Mid-Missouri Drug Task Force. Isaac testified that he met with the other officers at Pecker's and then went to a residence on Smiley Lane. Loveless went to the rear of the residence and Isaac and Kidwell went to the front. They saw a Chevrolet SUV out front and an individual beside it. The officers were in plain clothes, with their guns holstered, and approached the individual from different

2

directions. As Kidwell went around Opie's vehicle, he told Isaac he could see a weapon in it. Isaac said they told Opie they were there to investigate. When Kidwell talked to Opie, Isaac had moved toward the back of the vehicle, and he did not hear Opie give consent for a search, although Kidwell told him that Opie had consented.

Isaac searched the passenger console and found a spoon with white residue. Kidwell retrieved the grease gun and showed it to him. Isaac then went to the side of the vehicle with Opie, while the other officers went inside the mobile home. He restrained defendant in handcuffs and defendant was upset.

Isaac did not prepare a separate report of the incident.

The next witness called by the Government was John Loveless. Loveless testified that he met the other officers at Pecker's and proceeded to the residence on Smiley Lane, but was dropped off where he could approach the residence from the rear. He walked to the back of the residence, and once officers had made contact with Opie, he walked around the mobile home and toward the front. He stated he did not have his firearm drawn. As he walked by the residence, he saw a red bong in plain sight through the window and thought he heard something inside. Although Opie said no one was inside the mobile home, he and Kidwell decided to do a quick sweep. During the protective sweep, they had their guns drawn.

Loveless said he did not hear the conversations between Opie and the other officers prior to the protective sweep. He knew defendant was on probation or parole and told the other officers of that fact while they were at Pecker's.

Defendant Eric Opie testified on his own behalf. He stated he was working on the stereo in his vehicle when he saw two officers rushing at him with their guns drawn. He asked them if they had a warrant and said they told him they didn't need one because he was on parole. He stated he was told to back away from the vehicle, and that he didn't give the officers consent to search it. After Kidwell found the gun and gave it to Isaac, Opie was handcuffed. Opie said he dialed Parson's telephone number on his cell phone and gave it to one of the officers. He said he was scared and didn't feel free to leave.

On cross-examination, Opie testified that he knew Kidwell because he had gone to school with him. He said he saw Loveless with his gun drawn, but that the others might not have had

their guns out.  He said he was transported from the scene after the house sweep and telephone call to Parsons.  He was very upset at the time.

On rebuttal, the Government called Craig Holloway, a special agent with ATF.  He was contacted by another agent and went to the residence.  He did not talk to Opie until he was at the county jail.  He identified the weapon at the scene as a World War II vintage M3 45-caliber submachine gun.

## Discussion

Defendant claims the officers lacked probable cause to search his vehicle and to arrest him.  The credible evidence presented at the hearing indicates that the officers had a reasonable suspicion to believe a crime was being committed, based upon the telephone calls by Gary Parsons, the description of the weapon, the confirmatory drive-by made by Kidwell that Opie was at the residence, and knowledge that Opie was a felon believed to be in possession of an automatic weapon.  Clearly, Parsons' telephone call was not an anonymous tip, but information from an identified confidential source who gave very specific information about items at his own residence.

If an officer has reasonable suspicion that a crime has been committed, he can briefly detain an individual to conduct an investigation.  Reasonable suspicion requires that an officer be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Terry v. Ohio, 392 U.S.1, 21 (1968).

Under the circumstances presented here, the officers had reasonable suspicion and probably had probable cause to believe that Opie, a felon, was in possession of a firearm.  Thus, they were justified in conducting an investigation.  After they walked by Opie's vehicle with the doors open, and Kidwell saw the magazine on the floorboard, officers then had probable cause to believe that Opie was in possession of a firearm and they had probable cause to search the vehicle.  When the machinegun was retrieved, it was beyond question that officers had probable cause to arrest defendant.  Possession of a machine gun is unlawful, 18 U.S.C. § 922(o), and Opie's possession of a firearm, as a felon, was also unlawful.

Under Fourth Amendment jurisprudence, warrantless searches are presumptively unreasonable.  Horton v. California, 496 U.S. 128, 133 (1990); United States v. Ross, 456 U.S. 798, 824-25 (1982).  One exception to that basic rule, however, is the "automobile exception."

4

United States v. Castaneda, 438 F.3d 891, 893 (8th Cir. 2006). "The warrantless search of a vehicle is constitutional pursuant to the 'automobile exception' to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." United States v. Castaneda, 438 F.3d at 893 (quoting United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003)). "Probable cause exists 'where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006) (quoting United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005)).

Here, officers investigated information provided by a known informant who claimed he had first-hand information. They then obtained corroborating information when a portion of the magazine was seen in plain view inside the vehicle, and thus, had probable cause to search the vehicle without a warrant. Objects falling into the plain view of an officer properly in a position to see them are subject to seizure and admissible as evidence. Harris v. United States, 390 U.S. 234 (1968). Under these circumstances, officers did not need Opie's consent to search his vehicle, and so that issue is irrelevant.

Defendant also asserts officers lacked probable cause to search the residence without a warrant. The Government indicates this issue is moot because if this case goes to trial, the Government does not intend to introduce the evidence found in the residence. Nevertheless, based upon the credible evidence, the court finds that the officers initially conducted a protective sweep of the residence because Loveless heard a noise coming from the inside. The search in which evidence was seized was made after Parsons voluntarily gave consent to the search and there is no dispute Parsons had the authority to consent. Further, the evidence discovered would not be suppressed because it could be used under the inevitable discovery doctrine. Nix v. Williams, 467 U.S. 431 (1984).

For these reasons and those set forth in more detail in the Government's brief, it is

RECOMMENDED that defendant Eric Opie's motion of January 9, 2007, to suppress evidence and statements be denied. [17]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See

5

Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983). Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 27th day of February, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge